Filed 12/23/22  Kaminsky v. City of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ESTHER KAMINSKY,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>CITY OF LOS ANGELES,<br><br>   Defendant and Respondent. | B310170<br><br>(Los Angeles County Super. Ct. No. 19STCV24547) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Schonbrun Seplow Harris Hoffman & Zeldes, Paul Hoffman, and John C. Washington; Donald G. Norris, a Law Corporation and Donald G. Norris; Law Offices of Sherman M. Ellison and Sherman M. Ellison; Waymaker, Donald R. Pepperman, and Sam Meehan for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Scott Marcus, Chief Assistant City Attorney, Blithe S. Bock, Managing Assistant City Attorney, and Sara Ugaz, Deputy City Attorney, for Defendant and Respondent.

When it comes to speeding tickets and so-called "speed traps," the Legislature has passed statutes that prove you can fight City Hall.  As we decide in this appeal, however, neither those statutes nor any other legal theory permits civilly suing a city to recover monetary damages or other relief for speed traps— at least on the facts and theories of liability properly presented here.

## I.  BACKGROUND

*A.    Background Law*

California's basic speed law provides that "[n]o person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent . . .  and in no event at a speed which endangers the safety of persons or property."  (Veh. Code, § 22350.)

The Vehicle Code prohibits "peace officer[s] or other person[s]" from "us[ing] a speed trap in arresting . . . any person for any alleged violation of this code" and from using a speed trap "in securing evidence as to the speed of any vehicle for the purpose of an arrest or prosecution under this code."  (Veh. Code, § 40801.)  The Vehicle Code defines "speed trap" to include a "section of a highway with a prima facie speed limit [provided or established in certain ways] if that prima facie speed limit is not justified by an engineering and traffic survey conducted within five years prior to the date of the alleged violation, and enforcement of the speed limit involves the use of radar or any other electronic device that measures the speed of moving objects."  (Veh. Code, § 40802, subd. (a)(2).)

The Vehicle Code also specifies certain consequences when speed traps are used.  Under Vehicle Code section 40803, no

3

evidence of a vehicle's speed "shall be admitted in any court upon the trial of any person in any prosecution under this code upon a charge involving the speed of a vehicle when the evidence is based upon or obtained from or by the maintenance or use of a speedtrap." Vehicle Code section 40804 makes "an officer or other person . . . incompetent as a witness if the testimony is based upon or obtained from or by the maintenance or use of a speed trap." And Vehicle Code section 40805 states "[e]very court shall be without jurisdiction to render a judgment of conviction against any person for a violation of this code involving the speed of a vehicle if the court admits any evidence or testimony secured in violation of, or which is inadmissible under[,] this article."

### B.     *Plaintiffs and Appellants' Speeding Tickets*

Plaintiffs and appellants Esther Kaminsky, James Cameron, Mark Shamoun, and Joseph McLaughlin were each cited for driving over a posted speed limit in the City. On March 8, 2017, Shamoun was arrested and issued a citation for unsafe speed in violation of Vehicle Code section 22350 on Roscoe Boulevard near Sale Avenue. On November 17, 2017, Cameron was arrested and issued a citation for unsafe speed on Sepulveda Boulevard near Sardis Avenue. On April 2, 2018, Kaminsky and McLauglin were each separately arrested and issued citations for unsafe speed on Canoga Avenue near Strathern Street.[1]

All four plaintiffs were informed by the respective police officers who arrested them that their speed had been detected by use of a laser device, and the citations they received similarly

---

[1]     The record does not identify the precise speed at which any of the plaintiffs were driving.

4

indicated a laser device was used in determining their speed. All four plaintiffs were released from custody only by signing an agreement to appear in court.

McLaughlin chose not to contest his citation and paid $436 in fines and fee assessments in June 2018, as well as a fee to attend traffic school. McLaughlin's conviction on the citation charge was entered in October 2018.

Shamoun, Cameron, and Kaminsky each retained counsel to represent them. Their citations were ultimately dismissed at trial because no valid traffic survey was in place at the time of the citation.[2]

### C. *Plaintiffs Civilly Sue the City*

Plaintiffs filed a putative class action complaint alleging nine causes of action against the City of Los Angeles and the City of Los Angeles' Department of Transportation in July 2019. Generally speaking, the complaint alleged that in or around 2008, the City began allowing its engineering and traffic surveys (traffic surveys) to expire on hundreds of miles of City streets and began conducting inadequate traffic surveys that did not meet the requirements of the Vehicle Code. As alleged, the City did not disclose that it was not complying with legislative prohibitions against speed traps to the public, instead concealing that fact while continuing to arrest motorists and issue them speeding citations at speed trap locations based on the use of

---

[2] The record does not indisputably establish the reason for dismissal of Cameron's citation, but Cameron contends this was the reason and the fact of dismissal is undisputed.

5

radar or laser devices. The complaint also alleged the City Council for the City began making efforts to update speed limits in 2018.

After an initial demurrer, plaintiffs filed a first amended class action complaint (the operative complaint) in May 2020. The operative complaint alleged plaintiffs and the putative class members were each arrested and subjected to criminal prosecution by the issuance of a citation to appear in court by a Los Angeles Police Department officer for exceeding the posted speed limit. Plaintiffs contended the locations at which they were arrested and cited constituted unlawful "speed traps" because the posted speed limits were not justified by valid traffic surveys, and their speed was determined by use of a laser or radar device.

According to the operative complaint, plaintiffs had a due process right to the disclosure of favorable or exculpatory evidence, including evidence that no valid traffic survey existed. Plaintiffs alleged the City had a self-executing obligation to disclose exculpatory information soon after the issuance of each citation, and the City did not make such disclosures within 30 days prior to trial. Instead, in issuing and prosecuting speeding citations, the City impliedly represented it had complied with applicable laws and regulations and plaintiffs did not know of the traffic survey requirement and had no reason to suspect the City had a systematic practice of noncompliance.

The operative complaint asserts nine causes of action, including, as pertinent here: violation of mandatory duties under Government Code section 815.6; negligence; a claim under Section 1983 for arrest and citation without probable cause; a claim under Section 1983 for violation of the due process right to disclosure of exculpatory material; a claim under Section 1983 for

6

violation of the due process right to not be criminally charged or prosecuted based on falsified evidence; violation of Article 1, sections 7 and 13 of the California Constitution; and violation of the Bane Act (Civil Code section 52.1).[3]  Broadly speaking, these various causes of action can be grouped to allege two theories of liability.  First, plaintiffs contend the City, or its employees, breached duties in relation to plaintiffs' arrests and citations in speed traps.[4]  Second, plaintiffs contend various of their constitutional rights had been violated by the use of the speed traps and by the course of events in plaintiffs' respective prosecutions.[5]  Among the exhibits to the operative complaint

---

[3]      "The Bane Act makes it unlawful for any person to interfere by threat, intimidation, or coercion, or attempt to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual secured by the Constitution or laws of California." (*Murchison v. County of Tehama* (2021) 69 Cal.App.5th 867, 896.)

       Plaintiffs also alleged causes of action for false arrest and negligent misrepresentation, but those are not the subject of any claim of error on appeal.

[4]      Plaintiffs' cause of action for violation of mandatory duties alleges the City violated a mandatory duty to prevent the use of speed traps, and its cause of action for negligence alleged various City employees had a duty to use due care in performing their obligations related to speed traps, and breached those duties.

[5]      Plaintiffs alleged three claims under Section 1983 predicated on alleged violations of a Fourth Amendment right to be secure against unreasonable seizure, a due process right to the disclosure of exculpatory evidence, and a due process right not to be charged based on false or fabricated evidence.  Plaintiffs also alleged a claim under the California Constitution based on these same theories.  Plaintiffs additionally alleged a violation of the

were excerpts from LADOT's 2008 and 2014 databases identifying City streets with associated traffic surveys and their expiration dates.

In terms of remedies sought, the operative complaint seeks compensatory, consequential, actual, and treble damages; restitution and disgorgement; preliminary and permanent injunctive relief; and attorney fees and costs of suit.

### D. The City's Demurrer

The City demurred to the operative complaint, arguing it failed to state facts sufficient to state a cause of action. Among other arguments, the City contended the statutes prohibiting the use of speed traps imposed no mandatory duty on the City that would support civil liability and the use of the speed traps did not violate plaintiffs' Fourth Amendment or due process rights.

The City sought judicial notice of the traffic surveys for the locations at which plaintiffs had been cited and the notice of ruling for the trial court's decision on the original demurrer. The survey for Canoga Avenue between Strathern Street and Ventura Boulevard (where Kaminsky and McLaughlin were cited in April 2, 2018) was dated effective April 4, 2016. The survey for Sepulveda Boulevard between Ohio Avenue and Venice Boulevard (where Cameron was cited in November 17, 2017) was dated effective October 10, 2008 and an Addendum extended its expiration date to October 10, 2018. The survey for Roscoe

___

Bane Act, which contended the City interfered with plaintiffs' exercise of their constitutional rights to be free from unreasonable arrest and prosecution, as well as their statutory rights not to be arrested and cited in violation of California's speed trap prohibition.

8

Boulevard between Haskell Avenue and Valley Circle Boulevard (where Shamoun was cited on March 8, 2017) was dated effective March 19, 2012.

Plaintiffs opposed the City's demurrer. Plaintiffs' opposition included a single sentence requesting leave to amend if any cause of action was deemed insufficient. Plaintiffs also sought judicial notice of a portion of the California Manual on Uniform Traffic Control Devices, a minute order in another case involving Kaminsky, and a judgement entered in a case involving someone who was not a named plaintiff.[6]

### E.    The Trial Court's Ruling

The trial court sustained the City's objection to plaintiffs' request for judicial notice of the unrelated judgment and otherwise granted the parties' requests for judicial notice. The trial court then sustained the demurrer in its entirety without leave to amend.

As to the first cause of action for breach of mandatory duties, the trial court found the speed trap statutes passed by the Legislature did not impose mandatory duties upon the City to prevent the use of speed traps. As to the second cause of action for negligence, the court found plaintiffs had not sufficiently alleged the City violated any mandatory or discretionary duties and City employees were in any event immune from the alleged liability. As to the third cause of action for unreasonable seizure in violation of Section 1983, the court found plaintiffs had not alleged a violation of their Fourth Amendment rights because

---

[6]    The City objected to the request to judicially notice the judgment on the ground that it was irrelevant.

9

excessive speed provides probable cause for a stop. As to the fifth cause of action for failure to disclose exculpatory material in violation of Section 1983, the court found there was no authority that requires a police officer to know or disclose the validity of a traffic survey during a traffic stop or that requires the City to disclose information regarding the validity of the traffic surveys before trial. (The court also observed that requiring police officers to disclose invalid traffic surveys at the time of citation would defeat the purpose of issuing citations.) As to the sixth cause of action for violation of the right not to be criminally charged based on falsified evidence under Section 1983, the court found the operative complaint did not allege the City or its employees deliberately fabricated evidence that plaintiffs were exceeding the posted speed limit, and the traffic surveys were deemed invalid not because they were fabricated, but because they were no longer up to date. Plaintiffs' derivative seventh cause of action for violation of the California Constitution failed to state a claim for the same reason the federal constitutional claims failed. And as to the eighth cause of action for violation of the Bane Act, the court found plaintiffs did not state a claim because all of their other theories of liability failed and there was no sufficient allegation of coercion beyond that inherent in any arrest.

The trial court denied leave to amend, stating it allowed Plaintiffs leave to amend after the original demurrer and the First Amended Complaint still did not state viable causes of action.

## II.  DISCUSSION

The trial court's ruling is correct.  The Legislature has prohibited the use of speed traps, but the statutory language indicates it has not imposed mandatory duties on municipalities like the City to ensure compliance with that prohibition (as opposed to the aforementioned remedy of suppression for anyone cited as part of a speed trap).  Speed trap citations also do not constitute constitutional violations, at least on the facts alleged in the operative complaint: Police officers who stop motorists driving over the posted speed limit have probable cause to stop them; disclosure of traffic surveys in traffic court rather than prior to trial does not constitute a due process violation; and plaintiffs have not alleged any evidence was actually fabricated in support of their falsification of evidence claim.  Finally, the City employees mentioned in the operative complaint are immune from liability for their asserted negligence under the alleged circumstances described in the complaint.

### A.      Standard of Review

We review an order sustaining a demurrer without leave to amend de novo.  (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.)  "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.  We may also consider matters subject to judicial notice.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6[ (*Evans*)].)"  (*Yvanova v. New Century Mortgage Corp*, 62 Cal.4th 919, 924, fn. omitted.)  "'[T]he plaintiff has the burden of showing that the facts pleaded are sufficient to

establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action.'" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490-1491 (*Rossberg*).)

### B.     Mandatory Duty Claim

Government Code section 815.6 states that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  Thus, in determining whether liability for breach of a mandatory duty may be imposed on a public entity under this statute, California courts consider (1) whether an enactment imposed a mandatory duty; (2) whether the enactment intended to protect against the kind of risk of injury suffered by the plaintiff; and (3) whether breach of the mandatory duty was a proximate cause of the injury suffered.  (*Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 926.)  "[A]pplication of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498.)

"Courts have construed this [obligatory enactment requirement] rather strictly, finding a mandatory duty only if the

12

enactment 'affirmatively imposes the duty and provides implementing guidelines.' [Citations.]" (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 (*Guzman*); see also *Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1234.) The enactment cannot "simply set forth a prohibition or a right, as opposed to an affirmative duty on the part of a government agency to perform some *act*." (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239 (*Clausing*).) Instead, "to impose a mandatory duty on a public entity (see Gov. Code, § 815.6), "'the mandatory nature of the duty must be phrased in explicit and forceful language'" [citation], and the statute 'must impose a duty on the specific public entity sought to be held liable' [citation]." (*Guzman, supra,* at 894.)

Plaintiffs' appellate briefing focuses on one provision of the Vehicle Code in arguing its allegation of the existence of a mandatory duty should have survived the City's demurrer: Vehicle Code section 40801.[7]  That statute provides: "No peace officer or other person shall use a speed trap in arresting, or participating or assisting in the arrest of, any person for any alleged violation of this code nor shall any speed trap be used in securing evidence as to the speed of any vehicle for the purpose of an arrest or prosecution under this code."  By its plain terms, section 40801 prohibits peace officers and other persons from using speed traps in certain circumstances.  It does not impose any duties, mandatory or otherwise, on the City or LADOT, and

---

[7]  The other Vehicle Code sections cited in plaintiffs' mandatory duty cause of action define the terms "engineering and traffic survey" and "speed trap."  (Veh. Code, §§ 627, 40802.)

13

the statute does not provide for any guidelines to implement a purported mandatory duty.

Our interpretation of Vehicle Code section 40801 to impose no mandatory duty on local governments is underscored by the adjacent sections of the Vehicle Code, which specify the consequences for a violation of the rule against speed trap usage in prosecutions under the Vehicle Code involving a vehicle's speed. These too do not promulgate implementing guidelines that might suggest the imposition of a mandatory duty. Section 40803, for example, provides that evidence of the speed of a vehicle obtained using a speed trap is inadmissible. Section 40804 similarly provides that an officer or other person is incompetent as a witness if their testimony is based on or obtained from the use of a speed trap. And section 40805 provides that courts are without jurisdiction to render convictions if the court admits any evidence or testimony secured in violation of the speed trap law. While these sections obviously establish there are consequences for use of an improper speed trap, none outlaws the existence of speed traps, provides guidance regarding how any such assumed prohibition should be carried out, or states any consequences for the failure to do so. That all militates in favor of a conclusion that no mandatory duty is imposed. (See, e.g., *Clausing*, *supra*, 221 Cal.App.3d at 1239 [Education Code sections that expressly prohibited teachers from using corporal punishment but did not set forth guidelines or rules for preventing it did not create mandatory duties on the part of schools and districts to ensure students were never subjected to corporal punishment by teachers].)

In arguing the contrary, plaintiffs assert that a prohibitory statute still can create a mandatory duty. Even if that is true as

14

a general matter, it still does not change what we have already seen in examining the pertinent Vehicle Code sections that are at issue in this case: none include language from which the existence of a mandatory duty can be inferred. Plaintiffs also argue holding Vehicle Code section 40801 imposes no mandatory duty would be inconsistent with the purpose of the statute and the case law interpreting it because the statute does not allow for the exercise of any discretion in the use of speed traps. While it is true that the inclusion of discretionary language in a statute can be probative of whether it imposes a mandatory duty, the absence of such language is not determinative—and here, there are good indications apart from the question of authorized discretion that the Legislature intended to create no mandatory duty. Plaintiffs finally contend on the issue of mandatory duty that Vehicle Code section 627 imposes its own mandatory duty by requiring traffic surveys to include consideration of prevailing speeds, accident records, and conditions not readily apparent to a driver. Assuming without deciding that Vehicle Code section 627 does, in fact, impose some mandatory duty, that duty is to ensure roadways reflect safe driving conditions. It is not a duty to protect plaintiffs from being stopped for traffic violations using speed traps, or to authorize recovery of alleged damages for use of speed traps.

     C.    *Constitutional Claims*
         1.    *Background legal principles*

Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the

15

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." "'To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.' [Citation.]" (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1472 (*Arce*).)

"In regards to plaintiffs' [S]ection 1983 claim, we "'apply federal law to determine whether [the] complaint [has pleaded] a cause of action . . . sufficient to survive a general demurrer." [Citations.] According to federal law, "we are required to construe complaints under [Section 1983] liberally." [Citation.] "To uphold a dismissal [for failure to state a claim for relief, the federal counterpart of our general demurrer], it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." [Citation.]' [Citation.]" (*Arce*, *supra*, 211 Cal.App.4th at 1471.) "In line with California practice, the court accepts the allegations in the complaint as true and construes the allegations, and any reasonable inferences that may be drawn from them, in the light most favorable to the plaintiff." (*Ibid.*)

### 2. *Fourth Amendment Section 1983 claim*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.) "A traffic stop for a suspected violation of law is a

16

'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. [Citation.] . . . [T]o justify this type of seizure, officers need only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." (*Heien v. North Carolina* (2014) 574 U.S. 54, 60.)

In their cause of action under Section 1983 alleging a Fourth Amendment violation, plaintiffs argue there was no proper basis for their arrest and citation because both resulted from use of a radar device at a location where no valid traffic survey was in place. The problem with this argument, however, is that the existence of a valid traffic survey does not defeat the officers' reasonable conclusion at the time of the stop that plaintiffs were exceeding the posted speed limit.[8] Indeed, "it is beyond contravention that excessive speed, whether detected through mechanical device or observation, provides probable cause for a stop." (*People v. Sullivan* (1991) 234 Cal.App.3d 56, 65 (*Sullivan*); see also *People v. Hardacre* (2004) 116 Cal.App.4th 1292, 1300 ["[a] law enforcement officer may legally stop a motorist if the facts and circumstances known to the officer support a reasonable suspicion that the driver has violated the Vehicle Code or some other law"]*; San Joaquin Deputy Sheriffs' Ass'n v. County of San Joaquin* (E.D.Cal. 2012) 898 F.Supp.2d

---

[8]     Plaintiffs argue their allegations that the police officers knew the surveys were invalid renders these principles inapposite. This is unpersuasive here, where the relevant traffic surveys—which were judicially noticed—all appear facially timely (e.g., dated within the five-year period prescribed by Vehicle Code section 40802) and thus valid based on the dates of plaintiffs' citations.

1177, 1186 [speeding is a vehicular violation that gives an officer probable cause to stop a driver].)  The Fourth Amendment Section 1983 claim therefore fails as a matter of law.[9]

Plaintiffs' claim also fails for another independent reason: "the prohibition against speed traps is strictly statutory" (*Sullivan, supra*, 234 Cal.App.3d at 65) and "[a] violation of state law does not itself suffice to show [defendants] violated [plaintiffs'] federal constitutional rights."  (*Wagda v. Town of Danville* (N.D.Cal. Oct. 24, 2016, No. 16-cv-00488-MMC) 2016 U.S.Dist.LEXIS 147108, at *38-39, fn. 19 [claim that traffic stop for speeding in speed trap violated Fourth Amendment rights failed because plaintiff did not allege officer lacked reasonable suspicion to stop motorist for speeding].)

Plaintiffs additionally argue they sufficiently stated a claim under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 (*Monell*).  In *Monell*, the U.S. Supreme Court held that "Section 1983 does not assign liability to a local government under a respondeat superior theory, but the entity may be liable if the constitutional violation was caused by its official policy, practice, or custom."  (*Kerkeles v. City of San Jose* (2011) 199 Cal.App.4th 1001, 1015-1016.)  To sustain a Section 1983 claim under *Monell*, "a plaintiff must show that (1) he or she possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy which amounted to 'deliberate indifference' to the plaintiff's constitutional right; and (3) that

---

[9]     Insofar as Plaintiffs allege a legal conclusion—that there was no probable cause for stopping them—the conclusory allegation is properly disregarded.  (*Evans, supra*, 38 Cal.4th at 6.)

18

action pursuant to that policy caused a violation of that constitutional right." (*Zuniga v. Housing Authority* (1995) 41 Cal.App.4th 82, 103-104 (*Zuniga*).) Because we conclude plaintiffs have not sufficiently alleged they were deprived of a constitutional right, their associated *Monell* claim also fails.

### 3. Section 1983 claim based on violation of due process right to disclosure of favorable evidence

"The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant . . . [¶] . . . [that is] both favorable to the defendant and material on either guilt or punishment. [Citation.]" (*In re Sassounian* (1995) 9 Cal.4th 535, 543-544, fn. omitted; see also *Brady v. Maryland* (1963) 373 U.S. 83, 87 (*Brady*).) "In *Brady*, the United States Supreme Court held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' [Citation.]" (*People v. Salazar* (2005) 35 Cal.4th 1031, 1042.) "[E]vidence that is presented at trial is not considered suppressed, regardless of whether or not it had previously been disclosed during discovery. [Citations.]" (*People v. Morrison* (2004) 34 Cal.4th 698, 715.) We will assume for purposes of analysis in this case that material exculpatory information must be disclosed to a defendant before he or she pleads guilty or no contest. (See, e.g., *Smith v. Baldwin* (9th Cir. 2007) 510 F.3d 1127, 1148; but see *United States v. Ruiz* (2002) 536 U.S. 622.)

None of the plaintiffs have properly alleged a procedural or substantive due process violation. Plaintiffs Kaminsky,

19

Shamoun, and Cameron appeared at trial, at which point evidence regarding the relevant traffic surveys was produced. They have not alleged the timing of the disclosure prejudiced the outcome of their trials. Nor could they, as they all had their citations dismissed based on the inadequacy of the relevant traffic surveys. As to plaintiff McLaughlin, the operative complaint does not allege McLaughlin would have gone to trial, and thus had his citation dismissed, if he had received evidence regarding the traffic survey in place at the location at which he was cited.

Plaintiffs' related contention that Penal Code section 1054.7's instruction that discovery disclosures be made at least 30 days prior to trial was violated similarly does not demonstrate a due process violation. A defendant's due process right to disclosure "is independent of, and thus not impaired or affected by, the criminal discovery statutes." (*Bridgeforth v. Superior Court* (2013) 214 Cal.App.4th 1074, 1081; see also *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378 ["The prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery"].)

### 4. *Fabrication of evidence*

As plaintiffs explain, they assert a claim for deliberate fabrication of evidence, as recognized by the Ninth Circuit in *Devereaux v. Abbey* (9th Cir. 2001) 263 F.3d 1070, 1076 (*Devereaux*). "A *Devereaux* claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence. [Citation.] Fundamentally, the plaintiff must first point to evidence he contends the government deliberately

20

fabricated.  [Citations.]  [¶] Then, there are two 'circumstantial methods' of proving that the falsification was deliberate. [Citation.]  The first method is to demonstrate that the defendant continued his investigation of the plaintiff even though he knew or should have known that the plaintiff was innocent.  [Citation.] The second method is to demonstrate that the defendant used 'investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information.'  [Citation.]  These methods are not themselves independent causes of action.  Rather, they are methods of proving one element—intent—of a claim that the government deliberately fabricated the evidence at issue." (*Bradford v. Scherschligt* (9th Cir. 2015) 803 F.3d 382, 386.)

Plaintiffs' operative complaint did not identify any evidence allegedly fabricated by the City.  As a result, their claim for fabrication of evidence necessarily fails.  *Spencer v. Peters* (9th Cir. 2017) 857 F.3d 789, 799, upon which plaintiffs rely in attempting to argue the contrary, does not hold a plaintiff need not identify evidence that was fabricated in order to state a named fabrication of evidence claim.  Rather, it explains ways in which a plaintiff may prove evidence was fabricated in the absence of direct evidence.


5.      *Claims under the California Constitution*

California has generally adopted Fourth Amendment jurisprudence for interpreting analogous provisions of the California Constitution.  (*People v. Perry* (2019) 36 Cal.App.5th 444, 466; see also *People v. Buza* (2018) 4 Cal.5th 658, 685-686.) Accordingly, because we concluded plaintiffs did not state a claim

21

under the Fourth Amendment, they have not stated a claim under the California Constitution.

Similarly, "[b]oth the federal and state Constitutions compel the government to afford persons due process before depriving them of any property interest. [Citations.] In light of the virtually identical language of the federal and state guarantees, [the California Supreme Court has] looked to the United States Supreme Court's precedents for guidance in interpreting the contours of our own due process clause and have treated the state clause's prescriptions as substantially overlapping those of the federal Constitution." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) Because we conclude plaintiffs did not state claims under the federal due process clause, we likewise conclude the California Constitution-based claims also fail as a matter of law.

### D.     Bane Act

As explained earlier in the margin, the Bane Act prohibits interfering with rights guaranteed by the California Constitution or state law. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883.)

"There are two distinct elements for a [Bane Act] cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or

22

legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67.) Case law articulates two theories of coercion sufficient to support a Bane Act claim. "The first theory of coercion is that a violation of the Bane Act requires a showing of coercion independent from the coercion inherent in the constitutional violation itself. (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 [ ] (*Shoyoye*).)" (*County Inmate Telephone Service Cases* (2020) 48 Cal.App.5th 354, 369.) "The second analysis appears in *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766 [ ] (*Cornell*). *Cornell* held that, 'where an unlawful arrest is properly pleaded and proved, the "threat, intimidation or coercion" element of section 52.1 . . . requires a specific intent to violate protected rights.' (*Id.* at p. 799, italics & capitalization omitted; *ibid.* [ ].)" (*County Inmate Telephone Service Cases*, *supra*, 48 Cal.App.5th at 369.)

As already discussed, plaintiffs have not sufficiently pled the City violated any of their constitutional rights or any mandatory statutory duty. Plaintiffs therefore also fail to allege facts sufficient to establish the first prong of a Bane Act cause of action. Moreover, even if they had, they also failed to allege the requisite interference. There is no allegation of threat or intimidation in the complaint, and their allegations do not state a claim under either possible theory of coercion. Plaintiffs alleged no coercion independent of the arrests that would satisfy the *Shoyoye* theory of coercion, and even if we assumed an unlawful arrest was pleaded such that the *Cornell* theory of coercion might apply, plaintiffs did not plead defendants had a specific intent to violate their constitutional rights.

*E.     Negligence*

The operative complaint alleges the City is vicariously liable under Government Code section 815.2 for the acts or omissions of City employees.  Section 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (Gov. Code, § 815.2, subd. (a).)  It further provides that "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (§ 815.2, subd. (b).)  Thus, "in a cause of action for negligence, the existence and extent of an entity's vicarious liability under [section 815.2, subdivision (a)], will be determined by the scope of duty legally attributed to its employees." (*Torsiello v. Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 45.)

"Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820.)  Plaintiffs' negligence cause of action identifies three categories of City employees that plaintiffs allege acted negligently:  (1) "members of its City Council who enacted the relevant speed limits;" (2) "traffic engineers, managers and other employees of LADOT tasked with producing and maintaining valid ETSes and setting lawful speed limits;" and (3) "LAPD officers assigned to use radar and laser devices to enforce the basic speed law on City streets and prosecute alleged violations of the same."

24

As alleged, the employees—and thus the City—are immune from negligence liability.  The allegation that City Council members were negligent in enacting speed limits implicates the City Council's authority under Vehicle Code section 22358, which provides a local authority "may by ordinance determine and declare a prima facie speed limit" where it determines, based on an engineering and traffic survey, that the speed limit of 65 miles per hour is unsafe.  (Veh. Code, § 22358.)  As Vehicle Code section 22358 does not require a local authority to set a lower speed limit, its decision to do so is an act of discretion that falls within the immunity provisions of Government Code section 820.2.[10]  (Gov. Code, § 820.2 ["Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such

---

[10]     Plaintiffs argue that Government Code section 820.2 cannot apply to the allegations in the complaint because government employees are only immune for "basic policy decisions" and not operational or ministerial decisions that merely implement a basic policy decision.  (*Johnson v. State of California* (1968) 69 Cal.2d 782, 796.)  While this can prevent the issue of immunity from being determined at the demurrer stage, that is not the case here where the allegations of the complaint suffice to establish the acts in question were, in fact, discretionary rather than ministerial or operational.  (Compare *Zuniga, supra*, 41 Cal.App.4th at 99 [immunity could not be determined on demurrer] with *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 976 [affirming trial court's order sustaining demurrer in part on immunity grounds]; *Posey v. California* (1986) 180 Cal.App.3d 836 [same].)

discretion be abused"].)  The allegation that the arresting officers were negligent for arresting and citing plaintiffs also implicates section 820.2 immunity.  Plaintiffs were ticketed by police officers acting within the scope of their employment and whether the citations for unsafe speed should have been issued is a question within the officers' discretion.  Finally, despite plaintiffs' protestations to the contrary, their allegations against the City employees, and in particular their allegations that the engineers failed to comply with their statutory duties, is in essence a claim that they failed to enforce the speed trap laws.  As we have held there was no mandatory duty to do so, those allegations fall within the immunity provided by Government Code section 821.  (Gov. Code, § 821 ["A public employee is not liable for an injury caused . . . by his failure to enforce an enactment."].)

      *F.     Leave to Amend*

A plaintiff who suffers dismissal after a demurrer is sustained without leave to amend may make a showing of how the pleading may be cured by amendment for the first time on appeal.  (See, e.g., *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.)  "'The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] . . . [¶] To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.  [Citation.]  The plaintiff must clearly and specifically set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set

26

forth factual allegations that sufficiently state all required elements of that cause of action.  [Citations.]  Allegations must be factual and specific, not vague or conclusionary.  [Citation.]'" (*Rossberg, supra*, 219 Cal.App.4th at 1491; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44; see also *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890 [to meet burden for leave to amend, "plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action"].)

In their opening brief, plaintiffs make several conclusory representations, mostly in footnotes, that they could amend their complaint to allege new causes of action.  Then, in their reply brief, plaintiffs asserted they could amend "to sue as taxpayers to enjoin and restrain the City from illegally arresting and prosecuting drivers where it is clearly prohibited."  They also assert leave to amend should be granted to the extent necessary to "allege that Plaintiffs have a due process right not to be arrested and prosecuted through speed trap evidence under Vehicle Code Section 40801 without due process, and the City deprived Plaintiff[s] of that right without due process" or to bring a malicious prosecution claim.

Plaintiffs' assertions are insufficient to satisfy the requirement that a plaintiff must set forth the elements of the causes of action and authority for the claim and set forth factual allegations that sufficiently state all required elements of the causes of action.  Plaintiffs' piecemeal assertions that they could, if necessary, amend to allege new claims and their specific argument as to a single element of one new cause of action does

27

not demonstrate the trial court abused its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


KIM, J.


TAMZARIAN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.